**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: March 25, 2026
Date Decided: June 30, 2026

Alan R. Silverstein
Louis F. Masi
CONNOLLY GALLAGHER LLP
1201 N. Market St., 20th Floor
Wilmington, DE 19801

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801

Re:  *Shawn Luetchens v. David Landau, et al.*,
C.A. No. 2025-0359-KSJM

Dear Counsel:

The defendants have moved to dismiss the complaint under Court of Chancery Rule 12(b)(6).  The motion is granted in part.

Defendants David Landau and Ranjeet Bhatia (the "Individual Defendants") are the founders of Saffron Hill, a venture capital firm based in London.  Plaintiff Shawn Luetchens holds a 37.5% limited partnership interest in Defendant Saffron Hill 2 Carry Limited Partnership (the "Carry LP"), a Delaware limited partnership. The Carry LP holds a limited partnership interest in Defendant Saffron Hill Ventures 2 Limited Partnership (the "Operating LP"), also a Delaware limited partnership. The Operating LP has invested in several startup companies.

Plaintiff Shawn Luetchens's core claim is that he is entitled to a perpetual "carry interest" in the investments of the Operating LP.  Plaintiff seeks to enforce the Individual Defendants' alleged assurances "orally and in writing that his carried interest would not be affected by any subsequent restructuring or reorganization"

and further that "no action would be taken to reduce or impair Plaintiff's carried interest without Plaintiff's express written consent."[1]

But limited partnership agreements govern each of the limited partnerships. And Plaintiff's claim for breach of contract cannot be reconciled with those agreements for a few reasons. Foremost, Plaintiff fails to identify a contract or a contractual provision allegedly breached. Also, Plaintiff asserts breach of contract claims against all six defendants, but he is a party to only one contract (the Carry LP limited partnership agreement) and only one defendant (Saffron Hill 2 Carry GP LLC, or the "Carry GP") is a signatory to that contract. Plaintiff also asserts claims against Saffron Hill Ventures 3 Limited Partnership (the "New Operating LP"), even though he holds neither contractual relationship nor any interest, direct or indirect, in that entity.

Plaintiff's claim for breach of fiduciary duty, however, survives. Read charitably, Plaintiff alleges that the Carry GP and Individual Defendants owed Plaintiff fiduciary duties and breached those duties by restructuring Saffron Hill to uniquely deprive Plaintiff of the value of his investment. Defendants mounted only one full-throated defense to this claim—that it impermissibly duplicates the contract claims at issue. This decision concludes otherwise. And given the fiduciary duty claim survives, the unjust enrichment claim does as well.

---

[1] C.A. No. 2025-0359-KSJM, Docket ("Dkt.") 8 ("Am. Compl.") ¶¶ 21, 24.

## I.    FACTUAL BACKGROUND

The facts are drawn from the Verified Amended Complaint (the "Amended Complaint") and the documents it incorporates by reference.[2]

Saffron Hill is a venture capital firm.  As restructured in 2007, the Operating LP held interests in the portfolio companies, and the Carry LP held a limited partnership interest in the Operating LP.  The Carry GP is the general partner of the Carry LP.  Limited partnership agreements govern the Carry LP and the Operating LP.[3]

Luetchens joined Saffron Hill in 2000 as a partner.  At times, he worked as an executive of different portfolio companies.  Luetchens's primary compensation was "carry interest," or the right to receive payment from the Carry LP based on distributions (if any) from its limited partnership interest in the Operating LP.[4]

In late-2010, Plaintiff agreed to leave Saffron Hill.  He remained on the boards of several Saffron Hill portfolio companies with the expectation that he might return

---

[2] Am. Compl.  The Amended Complaint did not attach any of the parties' agreements or communications that it references in numerous places.  *See, e.g.*, *id.* ¶ 2 ("Defendants' effective cancellation of Plaintiff's carried interest compensation violated express agreements[.]"), ¶ 40 ("Plaintiff's unconditional partnership interest, and status as such, with Defendants has been repeatedly affirmed to Plaintiff in written and oral communications, as well as documents, delivered over the past 23 years.").  With their opening brief ("Defs.' Opening Br."), the defendants filed the Transmittal Affidavit of Alan R. Silverstein ("Silverstein Aff.") attaching copies of these documents. *See* Dkt. 13.

[3] Silverstein Aff. Ex. A ("Operating LP Agreement"); Silverstein Aff. Ex. B ("Carry LP Agreement").

[4] Operating LP Agreement §§ 1.1, 13.1(c); Carry LP Agreement, Sched. A.

to Saffron Hill when the private equity markets improved. When Plaintiff left Saffron Hill, the parties agreed that he would not receive compensation from Saffron Hill for his service on any of the portfolio companies' boards. But Plaintiff would retain his carried interest in those investments through his limited partnership interest in the Carry LP.

In October 2011, Luetchens entered into a "Carry Agreement Letter."[5] That agreement memorialized Luetchens's right to 37.5% of the capital distributions made by the Carry LP "to the extent" those distributions "are generated through proceeds in which a [Saffron Hill entity] made an initial cash investment before Dec 31, 2010."[6] The letter lists 13 companies that fit that description.

The original ten-year term of the Operating LP expired in 2017.[7] In June 2019, the limited partners authorized an extension of the term to December 31, 2022, to allow for the disposition of its two remaining investments, Agilyx and Coyuchi.[8]

Meanwhile, in 2018, Luetchens took over as chief executive officer of a Saffron Hill portfolio company, Optasia Medical. He received sporadic, below-market compensation in that role. He retained his right to carried interests memorialized in the Carry Agreement Letter.

---

[5] Silverstein Aff. Ex. D (Carry Agreement Letter).

[6] *Id.*

[7] Operating LP Agreement § 2.5.

[8] Silverstein Aff. Ex. E.

In late 2022, Landau acquired control of Saffron Hill from outside investors and reorganized again. As part of that process, Luetchens resigned from all remaining boards.

According to the Amended Complaint, Landau and Bhatia informed Luetchens in May 2023 that they were canceling his carried interest. They gave no explanation. When Luetchens pressed for one, Landau and Bhatia denied that he held any enforceable right to those interests. The defendants then changed course. They stopped claiming that they had canceled Luetchens's carry outright. Instead, they pursued a transaction that preserved his rights while shifting most of the future value tied to those rights into the New Operating LP.

Effective March 31, 2025, the Operating LP's General Partner[9] executed a Plan of Winding Up and Cancellation of Saffron Hill 2 Limited Partnership (the "Wind-Up Plan").[10] The Wind-Up Plan identifies the Operating LP's remaining assets as interests in two portfolio companies, Coyuchi and Agilyx.[11] It describes how those assets will be distributed to limited partners. It provides for a pro rata distribution of the Operating LP's equity interests in Coyuchi.[12] It allocates interests in Agilyx to the Operating LP's limited partners.[13] The Wind-Up Plan states that three limited

---

[9] Non-party Saffron Hill MGP 2 Limited is the Operating LP's General Partner.

[10] Silverstein Aff. Ex. F (Wind-Up Plan); *see also* Am. Compl. ¶¶ 10, 35.

[11] Wind-Up Plan § III(c).

[12] *Id.* § IV(a).

[13] *Id.* § IV(c).

partners of the Operating LP, who collectively hold more than 85% of Agilyx common stock, agreed to have their allocated Agilyx shares transferred to the New Operating LP. It further states that the shares allocated to the remaining limited partners will be distributed in kind or liquidated with the cash proceeds then distributed.[14] The Wind-Up Plan reserves a carried interest of Agilyx shares for Landau and two other limited partners.[15]

Plaintiff filed this action on April 3, 2025 against Landau, Bhatia, the Operating LP, the Carry LP, the Carry GP, and the New Operating LP (collectively, "Defendants"). He amended the complaint on August 20, 2025.[16]

The Amended Complaint asserts five counts:

- In Count I, Plaintiff claims that Defendants breached their fiduciary duties by canceling his carried interest and later transferring its value to a new entity to his detriment.

- In Count II, Plaintiff claims that Defendants breached contractual obligations by terminating or reducing his unconditional right to receive carried interest in the portfolio companies.

- In Count III, Plaintiff claims that Defendants made clear and repeated promises that he would receive carried interest, that he relied on those promises, and that Defendants later broke them to his detriment.

- In Count IV, Plaintiff claims that, if no enforceable contract exists, Defendants unjustly retained the benefit of his labor and services without providing the compensation those efforts earned.

---

[14] *Id.* § IV. Luetchens will receive 3,414 common shares of Coyuchi and 63,262 common shares of Agilyx. *Id.,* Scheds. B, C.

[15] *Id.* § IV(c), Sched. C.

[16] Dkt. 8.

- In Count V, Plaintiff claims that monetary damages cannot adequately remedy the loss of his carried interest and seeks specific performance requiring Defendants to transfer his share of the portfolio companies.[17]

The parties completed briefing on December 23, 2025.[18] The court heard oral argument on March 25, 2026.[19]

## II. LEGAL ANALYSIS

Defendants have moved to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted. "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[20] When considering a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[21] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[22]

---

[17] Am. Compl. ¶¶ 38–66.

[18] Dkt. 20 ("Defs.' Reply Br.").

[19] Dkt. 28.

[20] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[21] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[22] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)). Defendants argue that the Amended Complaint attributes wrongdoing to all defendants instead of specific entities or individuals and thus violates group-pleading prohibitions. Defs.' Opening Br. at 12; *see, e.g.*, Am. Compl. ¶¶ 18, 22–25, 31. Group

### A.      Breach Of Fiduciary Duty

Plaintiff claims that Defendants owed him fiduciary duties because of "express provisions and agreements he had with Defendants" and that he held an unconditional right to carried interest in the portfolio companies.[23]  Defendants breached those duties by purportedly canceling his carried interest in May 2023 and later transferring shares of Coyuchi and Agilyx to the New Operating LP.

Under Delaware law, a claim for breach of fiduciary duty "has only two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty."[24]  But "[i]t is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim."[25]  Thus, when paired with a breach of contract claim, a breach of fiduciary

---

pleading is generally disfavored in Delaware.  But where close relationships between corporate defendants complicate capacity determinations, it is reasonable at the pleading stage to attribute actions of the group to each entity.  *See Manti Hldgs., LLC v. Carlyle Gp. Inc.*, 2022 WL 1815759, at *8 (Del. Ch. June 3, 2022) (allowing plaintiff to group five entities together in the complaint because of their close relationship).  There is overlap between the defendant entities and individuals here because the two human defendants operate all the entity defendants.  Disentangling for which entity each individual acted requires information Plaintiff could not obtain at the pleading stage.  Any group pleading, therefore, is not a basis for dismissal.

[23] Am. Compl. ¶ 39.

[24] *HOMF II Inv. Corp. v. Altenberg*, 2020 WL 2529806, at *43 (Del. Ch. May 19, 2020), *aff'd*, 263 A.3d 1013 (Del. 2021).

[25] *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) (affirming the trial court's holding that a claim "seek[ing] to enforce obligations that are expressly addressed by contract . . . must be adjudicated within the analytical framework of a breach of contract claim").

duty claim "is appropriate only where it depends on additional facts, is broader in scope, and involves a different remedy."[26]

As to most Defendants, Plaintiff does not advance a theory of fiduciary status. Defendants are Landau, Bhatia, the Operating LP, the Carry LP, the Carry GP, and the New Operating LP. The Carry LP Agreement does not eliminate fiduciary duties. So the Carry GP owes fiduciary duties to the limited partners of the Carry LP, including Luetchens. Plaintiff provides no theory supporting the fiduciary status of the Carry LP, Operating LP, and New Operating LP. Although it is reasonably conceivable that the Individual Defendants owe fiduciary obligations, Plaintiff does not articulate any legal theory to that effect in the Amended Complaint or briefing. At the same time, Defendants do not meaningfully dispute the Individual Defendants' fiduciary status.[27] Count I is thus dismissed as to Carry LP, Operating LP, and New Operating LP on the first element.

Defendants next argue that the fiduciary duty claim impermissibly duplicates Plaintiff's contract claim. According to Defendants, Plaintiff's claim boils down to the allegation that Defendants owed Plaintiff an unconditional right to carried interest in the portfolio companies.[28] Charitably read, Plaintiff's claim of fiduciary breach is slightly different. Plaintiff claims that the Individual Defendants breached their

---

[26] *Borsody v. Gibson*, 2025 WL 1650395, at *6 (Del. Ch. June 11, 2025).

[27] *See* Dkt. 17 ("Pl.'s Ans. Br.") at 22 (making this point); Defs.' Reply Br. at 11–12 (conceding it by failing to address the argument).

[28] Am. Compl. ¶¶ 39–40.

fiduciary duties by orchestrating the Wind-Up Plan, which effectively canceled his carried interest, or at a minimum reduced the value of the carried interest.[29]

The Amended Complaint on this point is a slender reed, but it is reasonably conceivable that Plaintiff's claim for breach of fiduciary duty does not wholly overlap with his contract claim. Whether the Wind-Up Plan is consistent with Plaintiff's contractual rights does not totally address the question of whether any Defendant owing fiduciary obligations failed to act consistent with those duties in connection with the Wind-Up Plan.

*Garfield ex rel. ODP Corp. v. Allen* is instructive.[30] There, the plaintiff asserted claims for breach of fiduciary duty alongside a contract claim.[31] The defendants argued that the contract occupied the field, leaving no room for a claim for breach of fiduciary duty, even one pled in the alternative. The court rejected this argument, noting that the alternatively pled claims reached different defendants and could result in potentially different damages.[32]

Those distinctions are present here. It is reasonably conceivable that Plaintiff's claim for breach of fiduciary duty will reach different defendants than the counterparties to the putative contracts at issue. It is also reasonably conceivable that contractually permissible outcomes run afoul of fiduciary obligations.

---

[29] *Id.* ¶¶ 42–44.

[30] 277 A.3d 296, 357–61 (Del. Ch. 2022).

[31] *Id.* at 304.

[32] *Id.* at 362.

The motion to dismiss Count I is denied as to all Defendants except the Carry LP, Operating LP, and New Operating LP.

## B.     Breach Of Contract

Plaintiff claims that Defendants breached their agreement to provide him an unconditional carried interest in Saffron Hill's portfolio companies.  He argues that he earned that right by joining Defendants, working for their benefit for 23 years, and accepting undercompensated or uncompensated work in reliance on the agreement.  According to Plaintiff, Defendants breached the agreement by executing the Wind-Up Plan.

To prevail on a claim for breach of contract, a party must demonstrate the existence of a contract, the breach of an obligation imposed by the contract, and harm resulting from the breach.[33]  "In alleging a breach of contract, a plaintiff need not plead specific facts to state an actionable claim."[34]  Still, at the pleading stage, a plaintiff should at least "cite a single provision . . . to put Defendants on fair notice of Plaintiff's breach of contract claim[]."[35]

Plaintiff does not cite a single contractual provision in the Amended Complaint that any Defendants purportedly breached.  Nor did Plaintiff attach any agreement to the Amended Complaint.  Plaintiff instead gestures toward "organizational

---

[33] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

[34] *Id.* at 611.

[35] *Ryan v. Buckeye P'rs, L.P.*, 2022 WL 389827, at *6 (Del. Ch. Feb. 9, 2022), *aff'd*, 285 A.3d 459 (Del. 2022).

documents" from 20 years ago.[36] Similarly, Plaintiff points to a letter that allegedly confirmed his entitlement to carry—the Carry Agreement Letter. Even under Delaware's liberal pleading standard, these vague references do not provide Defendants sufficient notice of Plaintiff's breach of contract claim. Count II is dismissed for this reason.[37]

Separately, Plaintiff's contract claim fails on examination of the agreements to which Plaintiff is a party. Plaintiff is a party to the Carry LP Agreement. His rights are memorialized in the Carry Agreement Letter. Neither precludes the Wind-Up Plan. Neither requires Defendants to admit Plaintiff as a direct or indirect limited partner in any subsequent investment fund like the New Operating LP. Neither guarantees Plaintiff distributions. Rather, the Carry Agreement Letter entitles Plaintiff "to 37.5% of the capital distributions made by [the Carry LP] . . . *to the extent* these distributions are generated through proceeds from companies in which [a Saffron Hill Ventures] entity made an initial cash investment before Dec 31 2010."[38] Plaintiff's contract claim fails for this separate reason.

Count II is dismissed.

### C. Promissory Estoppel

---

[36] Am. Compl. ¶¶ 21–22.

[37] *Buckeye P'rs*, 2022 WL 389827, at *6; *see also US Ecology, Inc. v. Allstate Power Vac, Inc.*, 2018 WL 3025418, at *5–7 (Del. Ch. June 18, 2018) (dismissing breach of contract claim under Rule 12(b)(6) for failing to identify a contractual provision that was allegedly breached), *aff'd*, 202 A.3d 510 (Del. 2019).

[38] Carry Agreement Letter at 1 (emphasis added).

Plaintiff advances a claim for promissory estoppel. To state a claim, Plaintiff must show: "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise."[39] Promissory estoppel fails when the promises alleged are merely "expressions of opinion, expectations, assumptions, or preliminary discussions."[40] Courts dismiss claims that are "too vague to support an estoppel," particularly when lacking temporal terms defining the alleged promise.[41] Under Delaware law, promissory estoppel claims also fail "where a fully integrated, enforceable contract governs the promise at issue."[42]

The Amended Complaint alleges that oral and written "assurances" over 23 years support his right to carry.[43] But Plaintiff's right to carry derives foremost from the Carry LP Agreement, which prohibits oral modification. Potentially, the Carry Agreement Letter and the Operating LP Agreement also inform the analysis. In all events, Plaintiff cannot maintain an action for promissory estoppel when those

---

[39] *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000).

[40] *Riverside Risk Advisors LLC v. Chao*, 2022 WL 14672745, at \*32 (Del. Ch. Oct. 26, 2022).

[41] *See State v. Simpson*, 1990 WL 143837, at \*5 (Del. Ch. Sep. 24, 1990).

[42] *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013); *see also Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, at \*21 (Del. Ch. Feb. 27, 2020) (rejecting promissory estoppel claim based on a contract's integration clause).

[43] Am. Compl. ¶¶ 21, 24, 31–32, 53–55.

agreements govern his rights to carry and the Defendants' rights to wind up the Operating LP.[44]

Count III is dismissed.

### D. Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, and (4) the absence of justification.[45]

Plaintiff asserts an unjust enrichment claim in the alternative. Unjust enrichment claims often accompany claims for breach of fiduciary duty where the fiduciary misconduct improperly enriched the defendant.[46] In this way, a motion to dismiss an attendant unjust enrichment claim typically rises or falls with the fiduciary claim.[47] To the extent Plaintiff asserts his claim for unjust enrichment for this purpose, Plaintiff states a claim.

At times, Plaintiff frames his claim more generally. He does not directly argue that Defendants unjustly enriched themselves in structuring the Wind-Up Plan. According to Plaintiff, his "unjust enrichment claim concerns Plaintiff's uncompensated work for Saffron Hill."[48] He argues that it "would be unjust and

---

[44] *PharmAthene*, 67 A.3d at 348 ("Promissory estoppel does not apply, however, where a fully integrated, enforceable contract governs the promise at issue.").

[45] *Garfield ex rel. ODP Corp. v. Allen*, 277 A.3d 296, 341–51 (Del. Ch. 2022).

[46] *See generally Frank v. Elgamal*, 2014 WL 957550, at *31 (Del. Ch. Mar. 10, 2014).

[47] *Id.*

[48] Pl.'s Ans. Br. at 34.

inequitable for the Defendants to retain the value of the labor and services provided by Plaintiff over the past 23 years without reasonably compensating him."[49]

Defendants contend that Plaintiff's claim for unjust enrichment impermissibly duplicates of Plaintiff's claim for breach of contract. If a "contract is the measure of [a] plaintiff['s] right, there can be no recovery under an unjust enrichment theory independent of it."[50] And "[w]hen the complaint alleges an express, enforceable contract that controls the parties' relationship . . . a claim for unjust enrichment will be dismissed."[51] Defendants argue that Plaintiff's rights are measured by the Carry LP Agreement and the Carry Agreement Letter, such that Plaintiff's claim for unjust enrichment must be dismissed.

Plaintiff disputes that the contracts at issue occupy the relevant. According to Plaintiff, the unjust enrichment claim seeks compensation for over 23 years of work. He argues that this claim only comes into play if he is not entitled to the carried interest. This theory is dicey. But because Delaware law governs at least one version of Plaintiff's claim for unjust enrichment discussed above, the entire claim survives.

Count IV states a claim.

---

[49] Am. Compl. ¶ 61.

[50] *Wood v. Coastal States Gas Corp.,* 401 A.2d 932, 942 (Del. 1979).

[51] *Bakerman v. Sidney Frank Importing Co.,* 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006) (revised Oct. 16, 2006); *see also In re Lear Corp. S'holder Litig.,* 967 A.2d 640, 657 n.72 (Del. Ch. 2008); *MetCap Sec. LLC v. Pearl Senior Care, Inc.,* 2007 WL 1498989, at *5 & n.41 (Del. Ch. May 16, 2007).

E.      **Specific Performance**

Plaintiff seeks specific performance. "Specific performance is a remedy for a proven breach of contract."[52] The predicate contract claim is dismissed. Thus, this claim fails.

Count V is dismissed.

### III.     CONCLUSION

Defendants' motion to dismiss is granted in part. Plaintiff's fiduciary duty claim in Count I against Landau, Bhatia, and the Carry GP survives. Plaintiff's unjust enrichment claim in Count IV also survives against all Defendants. All other claims are dismissed.

Sincerely,

*/s/ Kathaleen St. J. McCormick*

Chancellor

cc:     All counsel of record (by *File & ServeXpress*)

---

[52] *26 Cap. Acq. Corp. v. Tiger Resort Asia Ltd.*, 309 A.3d 434, 464 (Del. Ch. 2023) (emphasis omitted).